PALMER et al. v. JOHN E. BROWN MFG. CO.

(Circuit Court, D. Massachusetts. December 13, 1897.)

No. 589.

1. PATENT—VALIDITY.
   A subsequent patent to the same patentee, which involves nothing more than the application of an invention, covered by an earlier patent, to a special art for which it was peculiarly adapted, is void.

2. SAME—INFRINGEMENT SUITS—PUBLIC ACQUIESCENCE.
   Public acquiescence, founded presumably upon two patents to the same inventor taken together, does not necessarily avail to support the later patent when sued on alone.

3. SAME—MACHINES FOR SEWING OR QUILTING FABRICS.
   The Palmer patent, No. 308,981, for a "machine for sewing or quilting fabrics," is void, as being a mere application to an appropriate use of what was covered by claim 7 of patent No. 304,550 to the same inventor.

This was a suit in equity by Frank L. Palmer and others against the John E. Brown Manufacturing Company for alleged infringement of letters patent No. 308,981, issued December 9, 1884, to Frank L. Palmer, for a "machine for sewing or quilting fabrics."

Edwin H. Brown, for complainants.
James E. Maynadier, for defendant.

PUTNAM, Circuit Judge. The patent in suit was issued on December 9, 1884, and is described as for a machine for sewing or quilting fabrics. The original application also covered what the inventor and the patent office designated a "mechanical movement," but, on the requirement of the office, the application was divided, and a patent was issued to the inventor on September 2, 1884, for what also was therein described as a "mechanical movement"; and it is this patent of earlier date which creates the only substantial difficulty the court finds in the case.

Claim 24 requires, however, independent consideration. It seems too indefinite. The Incandescent Lamp Patent, 159 U. S. 465, 16 Sup. Ct. 75. However this may be, the claim, if it can be properly interpreted, will be found either too broad to be sustained, or only a variation of what is covered by the other claims, in which latter event it must fall with them.

The underlying principle of the invention, and its application to a quilting machine, are made plain by the following extracts from the specification of the patent in suit:

"My invention relates more particularly to machines for quilting bed comfortables and other articles composed of several thicknesses of material; but such machines may be employed for sewing upon various fabrics in one or several thicknesses. The principal objects of my invention are to enable fabrics of comparatively large size—such as quilts and bed comfortables—to be quilted by a sewing machine while held in an extended or stretched condition upon suitable supports, and to produce such changes in the relative position of the fabric and sewing-machine needle by a universal movement in any and all directions, under control of a pattern, that quilting in large and elaborate patterns of artistic design may be quickly and automatically produced. The invention consists in various novel combinations, which are hereinafter described, and referred to in the claims. In order that the invention may be more readily understood, I will first give a brief description of the

principal parts of the machine which I have chosen to illustrate the invention. The fabric to be sewed or quilted is extended on a frame, which constitutes a holder or supporting carrier for the fabric, and the sewing machine has a long arm, to enable its needle to operate on all parts of the fabric which it is desired to quilt. Two carriages are employed, which are movable in directions transverse to each other, and one of which is supported upon the other. The lower carriage, which has only a simple movement, I term the 'first carriage,' and the other or upper carriage, which moves with as well as upon the first carriage, I term the 'second carriage.' The second carriage, therefore, has a compound movement, and controls the relative position of the fabric and sewing-machine needle. The fabric frame or fabric holder is supported by or suspended from this second carriage. Neither of the two carriages has a determined and invariable movement, but the speed and direction of movement of either carriage may be varied or changed relatively to the speed and direction of the other to any degree and at any point within the whole range of movement of the carriages. The speed of each carriage is increased or diminished inversely as the speed of the other is increased or diminished, and hence the change in relative position of the fabric and needle is always made at uniform speed in any direction. The fabric frame or holder is supported or suspended, preferably, by converging arms or hangers of rigid material, and these arms or hangers are connected with a single central support, which consists of an upright shaft or bar having a bearing in the second carriage. The movements of the carriages and fabric frame or holder are controlled by a pattern consisting of a guide or guiding slot arranged in pattern form, with which the aforesaid upright shaft or bar engages, and along which it is moved, and the movement of the fabric under the sewing-machine needle conforms to the movement of the aforesaid shaft or bar along the pattern. The fabric frame or holder is moved in any and all directions along the pattern or former, and the carriages serve simply as supports for the fabric frame, and permit such movement. The pattern or former preferably consists, in addition to the guide or slot before mentioned, of a rack or track also arranged in pattern form, and adjacent to the guide or slot, and the fabric frame and its central supporting shaft or bar are made to follow the rack or track by a pinion or wheel loosely mounted on the shaft or bar, and gearing with the rack or track. The pinion or wheel is or may be rotated by an endless band or chain, and by its rotation it travels along the pattern rack or track, and carries with it the fabric frame, its supporting shaft or bar, and the two carriages. Of course, as the pinion or wheel moves along the pattern rack or track, more or less of the driving band or chain is taken up, and I employ means for taking up the slack in the said band or chain and idler pulleys around which it passes. The end of the shaft or bar on which the said pinion or wheel is arranged enters the above-mentioned guide or slot, which is in pattern form, and thereby holds the pinion or wheel in engagement with the pattern rack or track."

These patents gave a monopoly of a valuable and important manufacture, which monopoly has been acquiesced in by the public until the late attempts of the respondent to disturb it. Therefore, if the entire invention described in the patent in suit was covered by it, these facts would give it so much support, and the underlying principle would be so broad, that the whole case, with reference alike to patentability and infringement, would be easily disposed of by the application of the rules stated by the circuit court of appeals for this circuit in Reece Buttonhole Co. v. Globe Buttonhole Co., 10 C. C. A. 194, 61 Fed. 958, and Heap v. Suffolk Mills, 82 Fed. 449.

The respondent relies especially on patent No. 185,954, issued to Frank L. Palmer on January 2, 1877, as anticipatory. The device covered by that patent did, indeed, make use of the germ of the invention before the court for quilting a narrow range of patterns; but it lacked the "universal movement in any and all directions" which

now appears. The present invention unfettered the thought made use of in the earlier device, and to unfetter thought is one of the prerogatives of great intellectual power and of genius. This fact has been so often applied practically in determining what is and what is not invention as not to need elaboration here.

We come, therefore, to the difficulty which arises from the issue of the patent No. 304,550, on September 2, 1884, to the same patentee to whom the patent in suit issued. As already said, the earlier patent assumes to cover a "mechanical movement," but it is safer to look directly at its essence than to attempt to settle the meaning of this phraseology and its application to this particular topic. Its seventh claim is as follows:

"(7) The combination, with a rack or track in pattern form and a positively operating engaging device acting thereon and capable of bodily movement relative thereto, of carriages supporting said device, movable in directions transverse to each other, and one mounted upon the other, whereby provision is afforded for the movement of said engaging device along the rack or track by its engagement therewith, substantially as herein described."

However the subject-matter of this claim may be designated, it contains much more than the elements necessary to complete the mechanical movement which underlies the invention, and it enumerates all the working details of a concrete mechanism, needing only the additions of power, and of well-known special parts, to convert it into a useful machine. The complainants, on inquiry by the court, declined to admit that the patent of September 2, 1884, is void; so that the question necessarily arises whether the additions of power and of special working parts, as shown and claimed in the patent in suit, involved patentable invention. Since, under the circumstances, the patent of September 2, 1884, cannot be regarded as anticipatory in the ordinary sense, the answer to the question just stated must determine the suit.

It is plain that any quilting machine which used the elements of the seventh claim of the patent of September 2, 1884, would infringe that patent, whether or not it employed the additional elements set out in the later patent. So that, if those additional elements involve no patentable invention, and, nevertheless, the later patent should be sustained, the monopoly of the earlier patent would be extended in violation of the statute, and it would be wholly immaterial in law whether the extension covered years, or only months. All this involves such a clear rule of law, and has been so many times decided, that it need not be elaborated.

The case was ordered reargued in order that the complainants might point out to the court, in detail or in general, the elements of patentable invention found in the later patent, and not in the earlier one. We are unable to perceive that they have done so, unless by referring the court to the following citations from Reece Buttonhole Co. v. Globe Buttonhole Co. (C. C. A.) 61 Fed. 958, 970:

"The essential feature of this claim is the so-called 'compound movement' given the needle bar, the result of simultaneous longitudinal and lateral motions. This alone was, of course, old and common in the arts; yet the suggestion of its application to this purpose, combined with the mechanism

devised therefor, constitute a patentable invention of a fundamental character, highly meritorious, and one to be protected by a liberal construction."

The complainants, seeking to apply these expressions to the case at bar, maintain that the patent of September 2, 1884, was only for a mechanical movement, namely, the "universal movement"; that the invention in the patent in issue consisted in applying this movement to a quilting machine; that in this respect the case corresponds to the application in Reece Buttonhole Co. v. Globe Buttonhole Co. of the "compound movement" to making buttonholes; and that it is immaterial whether the movement was adapted from an earlier patent, as the complainants claim they did, or from the common art, as Reece did. This may be true as a rule, but the error is in the application of it. The patent in issue found in the earlier patent much more than Reece found in the earlier art, because it found in the seventh claim, which we have cited, not only the "universal movement," but all the parts and mechanism needed to guide the engaging device in the rack or track which develops the pattern in the practical work of quilting as done by the complainants.

Neither is the complainants' case aided by the rules discussed and applied in Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, and National Cash-Register Co. v. Boston Cash Indicator & Recorder Co., 156 U. S. 502, 515, 15 Sup. Ct. 434; because it is not a question of applying to a new art what is covered by the seventh claim cited, but of applying what was on its face expressly intended for all the arts to a special art for which it was peculiarly adapted. On the whole, the respondent maintains that what is claimed in the patent in suit was simply an application to an appropriate use of what was claimed in the earlier patent, without the development of the inventive faculty in making the application. We think this proposition must prevail.

It seems proper to add that the result is not a result rendered necessary by the law, looking at Palmer's whole invention, but of his own option in accepting two patents, followed by resting complainants' suit on the later patent alone. We must also add that, in this suit, the public acquiescence to which we have referred does not avail, as it presumably relates to the two patents combined, and not to the later one alone, and it cannot be apportioned in its behalf.

The respondent maintains that in the patent of September 2, 1884, the patentee disclaimed what is now set up under the patent in suit, but we think the case in that respect falls within The Barbed-Wire Patent, 143 U. S. 275, 280, 281, 12 Sup. Ct. 443, 450, and not within Underwood v. Gerber, 149 U. S. 224, 230, 13 Sup. Ct. 854; yet, for the reasons stated, the complainants cannot prevail. Let there be a decree, as provided in rule 21, dismissing the bill, with costs for the respondent.