### SIMONDS ROLLING-MACH. CO. v. HATHORN MFG. CO. et al.

(Circuit Court, D. Maine.   July 30, 1898.)

No. 487.

**1. PATENTS—LIMITATION OF CLAIMS—FORMS AND PROPORTION.**
It is of little consequence whether the relative dimensions of parts of a device are gathered from a scale expressly shown, or from the apparent proportion indicated by drawings without a scale; and, in either event, the dimensions shown are not to be taken as elements in the claim, unless the patentee has expressly limited himself within the rules stated by the circuit court of appeals for the First circuit in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958.

**2. SAME—ANTICIPATION.**
An inventor is entitled to be protected to the extent of what he practically accomplishes, and no more, and anticipatory matter which has never gone into practical use is to be narrowly construed.

**8. SAME—PATENTABLE METHOD OR ART.**
A method of making rolled-metal forgings that are circular in cross-sectional area, by means of dies used in pairs, and moved in opposite directions over the metal to be shaped, *held* to be patentable as an "art," in that it involved the application of knowledge or science to effect a desired practical purpose, and did effect it.

**4. SAME—CAR-AXLE DIES.**
The Simonds patent, No. 319,754, for improvements in faces for car-axle dies, *held* not anticipated by the Bundy English patent of May 1, 1806, for "machines or instruments for making leaden bullets and other shot"; and also *held* valid and infringed as to claim 1.

**5. SAME—METHOD OF MAKING ROLLED-METAL FORGINGS.**
The Simonds patent, No. 419,292, for a method of making rolled-metal forgings that are circular in cross-sectional area, *held* to show patentable invention over the Bundy English patent, of May 1, 1806, and over Simonds' earlier patent, for improvements in faces for car axles (No. 319,754); and also *held* infringed.

**6. SAME—INVENTION.**
The difficulties arising under the expressions of the supreme court in Lock Co. v. Mosler, 8 Sup. Ct. 1148, 127 U. S. 354, and in Underwood v. Gerber, 13 Sup. Ct. 854, 149 U. S. 224, with reference to the issuing of independent patents for a machine, an art, and a product, involved in the same fundamental invention, do not apply to the present case, because Simond's second patent clearly showed invention over his earlier patent.

Fish, Richardson & Storrow, for complainant.
Phillips & Anderson, for defendants.

PUTNAM, Circuit Judge.    This bill is brought on the two claims of a certain patent, applied for on June 16, 1884, and issued on June

9, 1885, to George F. Simonds, and on a patent, which contains only one claim, applied for by the same George F. Simonds on March 24, 1885, and issued to him on January 14, 1890. It may be of importance to note here that, although the earlier patent issued several years before the later one, yet the application for the later one was filed while the earlier one was pending in the patent office.

The introductory part of the earlier patent claims that Simonds had invented "certain improvements in faces for car-axle dies designed to be used in pairs," and the specification describes the alleged invention as follows:

"My invention relates to die faces which are moved in opposite directions over the metal to be shaped, the blank rotating on its axis between them. My invention consists in dies designed to be used in pairs, and provided with forming surfaces raised upon the plane face of the die, and with reducing and spreading surfaces running diagonal to the line of movement of the die, and standing oblique to the plane of the die."

The claims in that patent are as follows:

"(1) Dies adapted to form metal articles circular in cross-sectional area, with the working parts raised upon a plane surface, and provided with forming surfaces running in line with the movement of the die, to give the shape required, and diverging reducing and spreading surfaces to force the metal laterally, substantially as described.

"(2) Dies adapted to form metal articles circular in cross-sectional area, having forming surfaces to give the shape required, and reducing and spreading surfaces to force the metal laterally, provided with corrugations or irregularities, to engage the mass of metal and insure its rotation, substantially as set forth."

In the introductory paragraph of the later patent, Simonds claims to have invented "certain improvements in methods for making wrought-metal forgings that are circular in cross-sectional area"; and in the specification he states: "My invention consists in a novel method of making wrought-metal forgings which are circular in cross-sectional area."

The claim is as follows:

"The method herein described of making rolled-metal forgings by acting upon all parts of a metal bar in spiral lines, so as at each part in succession and upon such lines to cause the bar to rotate and to strain and spread the metal axially and compress it to the required shape and size."

The specification states that the various mechanical devices and die faces illustrated and described had been made the subject-matter of various applications for patents, of which five are referred to by the serial numbers of the applications. With the rest is included serial number 135,014, which resulted in the earlier patent in issue here. What various devices and die faces were made the subject-matter of the four other applications has not been called to our attention, and we therefore presume it is of no consequence in this case.

The later patent also states that there was a pending application for the articles produced by the improved method claimed in it; but the history of that application has not been brought to our attention, and we assume that it, also, is of no present importance. We state these facts, therefore, only in order that it may be seen that, pending the application for the earlier patent in suit, Simonds had on file in

the patent office applications for patents for both the product and the method or art to which the patented dies were supposed to relate.

A controversy arises whether or not the later patent for the method or art was valid, in view of the issue of the earlier patent for the dies made use of in the art; but this will be considered in its proper order. Aside from this, the only important question in the case which, in our opinion, requires our attention, grows out of a patent issued in England to William Bundy, on May 1, 1806, in which the patentee briefly describes his monopoly as covering an "invention of machines or instruments for the purpose of making leaden bullets and other shot." It is plain that the machines which Bundy exhibited in his specification concerned only spherical objects, while both the dies and the method or art claimed by the complainant in this case have a much broader range.   Nevertheless, the underlying principle of all that Simonds patented is involved in connection with the production of spheres, and he makes use of the mechanical laws of the Bundy dies; but he also makes use of the laws of physics by virtue of which his dies, while forming the sphere, produce, in addition, a "forged surface," in the technical sense of the term.   None of these laws are explained in Simonds' specification, which is of no legal consequence, because an inventor is not deprived of the fruits of his genius by the fact, if it exists, that he is neither a mathematician nor a physicist.   Nor are the laws properly expounded in any portion of the proofs which have been called to our attention.   We will not attempt to explain them ourselves, nor to describe categorically or technically the elements of the dies used by either Bundy or Simonds for forming spherical objects.   We will endeavor, however, to make up from Simonds' specifications a sufficiently practical explanation of them, leaving the mathematical and physical principles which they involve to be worked out by those who are curious to do so.

The dies are in pairs, reciprocating face to face, commencing their movement at the vanishing points to which we will refer.   Into the face of each die is cut a depression, which begins at a vanishing point at one extremity, and at the other extremity exhibits a cross section which is half of a cylinder, or, as expressed in Simonds' specification in his later patent, "about" half.   From the vanishing point at one extremity to the other extremity, the die face is said by Simonds, in the same specification, to gradually deepen and spread until it reaches the other extremity, where, as said, the cross section is half of a cylinder, or thereabouts.   In Bundy's specification he says, in substance, that, when the two dies have been moved from right to left, so that their work is complete, they form, "when close together at the two extremes," "a complete cylindrical hole, the diameter of the ball intended to be made."   As already said, Bundy had in contemplation only the shaping of spheres; but Simonds, in his earlier patent, as expressed in his claims, had in contemplation the shaping of various "metal articles circular in cross-sectional area"; and he exhibited, in his drawings attached to his specification, dies adapted to the rolling of car axles, and no other dies.   It is evident that he had these particular dies primarily in contemplation, and this even

to the extent of the fact that he made no allusion whatever to spherical objects until he drew his specification for his later patent.

While it is impossible to controvert successfully that, so far as the mere shaping of articles is concerned, the entire underlying principle of Simonds' dies is found in Bundy's, nevertheless it cannot be denied that, so far as concerns articles other than spheres, there was invention in broadening out the application of the principle made by Bundy so as to cover such other articles; so that, so far as this case relates to boot calks, which, in whole or in part, are circular in cross-sectional area, with or without the matter of forging, Simonds' patents involved invention, and have been infringed. There must therefore be a decree in favor of the complainant, so far as such boot calks are concerned, on one or both of the complainant's patents, to the extent that all the defendants are joint infringers, and no further. On whether both or one, and, if on but one, then on which, depends on principles to be further discussed. So far as the earlier patent is concerned, however, this infringement must, in any event, be limited to the first claim, because, in view of the fact that this claim must be accepted as the broad one, the rules of construction require that the precise location of the corrugations found in the second claim, and described in the specification referred to by that claim, be construed as a strict limitation, for which the location of the corrugations, as used by the defendants jointly, cannot be, under such rules of construction, received as an equivalent.

Notwithstanding the apparent concession of the counsel on each side that the complainant's earlier patent covers dies for making spheres, the court, which, with reference to questions so far affecting the public as those of the validity and construction of patents, is not bound by the stipulations of parties, cannot accept this conclusion, in view of the evident insufficiency of the specification to reach anything beyond what is expressly described in it. As we have already said, there is nothing in Simonds' earlier patent to show that the patentee had in contemplation dies for shaping any structures except car axles, and perhaps other like structures, or that he had any conception of the underlying laws which govern the operation of his dies, or that he had any conception that those laws, when broadly applied, would embrace the production of spheres. Except for one to whom those laws are familiar, and perhaps even for him, the passage from the production of car axles to spheres apparently involved invention; and while it is the ordinary rule, often stated, that a patentee is entitled to claim all the uses and advantages which belong to his patent, whether foreseen by him or not, yet this is limited so as to exclude uses which require the further exercise of the inventive faculty, and uses the means for accomplishing which are not so indicated in the specification as to make them available to persons of ordinary skill in the art. This specification contains no hint of the general laws governing the operation of this class of dies, nor anything from which a person of ordinary skill in the art could pass from the production of car axles to spheres. Therefore Simonds' earlier patent cannot be regarded as anticipatory of any subsequent device of

some other person adapted to the production of spheres; and it follows, axiomatically, that the production of spheres cannot be held to be an infringement of it.    The mere fact that the claims are so broad that, by a literal interpretation, they relate to every metal article circular in cross-sectional area, does not, under the circumstances, meet this difficulty; because, by well-settled rules, it is not enough that a patent suggests an object to be accomplished, if it does not also point out practically the means for its accomplishment.    No authorities are needed in support of this proposition; but, as an apt illustration of it, we refer to the familiar case of Gordon v. Warder, 150 U. S. 47, 50, 14 Sup. Ct. 32.    There the court said that although the specification contained a paragraph expressly stating that it might be advantageous, in some cases, to accomplish a certain result, yet, inasmuch as no means were provided, or method pointed out, whereby the result could be reached, the specification was ineffectual in this particular. Therefore, we think, we may safely conclude, so far as the production of spheres is concerned, to lay Simonds' earlier patent out of the case, and, further, that in no event can that patent concern the case at bar, except to the extent that the dies, so far as used by defendants jointly for the production of boot calks, infringe its first claim.

Before proceeding further with the case, it is necessary to understand exactly what was Simonds' underlying invention, and how far it is represented by each of the two patents in issue here.    In the specification of the later patent, Simonds states what we have already quoted,—that his invention consisted "in a novel method of making wrought-metal forgings which are circular in cross-sectional area." Also, he states that, by the aid of his method, he is enabled to produce forgings with great rapidity, and accurately, and that he secures in the finished forgings a compacted exterior.    This specification shows throughout that it relates to forgings, in the proper sense of the word; and, at every point where it refers to the product of the method patented, it uses the expression "rolled-metal forgings," "wrought-metal forgings," or "metal forgings."    It makes no claim that the invention covered by the patent applies to anything else.    It would be impossible, in view of the clear language of the claim,—that is to say, "the method herein described of making rolled-metal forgings,"—in connection with what appears at all points throughout the patent, to hold that anything would infringe which merely shaped metal articles, especially those made from plastic metal like lead.    It is also apparent that the patent throughout relates to the production of forgings of the character described, through proper dies, with the great rapidity with which ordinary forgings are produced through power rolls, and of a uniform forged surface.    In addition, the specification expressly covers spheres, and points out in detail the manner of producing them, with proper forged surfaces.

There has been much discussion at the bar in connection with the words in the claim of this patent, namely, "by acting upon all parts of a metal bar in spiral lines."    It is said by the defendants that this is a mere statement of the mathematical consequences of the operation of the diverging edges of the grooves in the dies.    This is undoubtedly true; and, very likely, it is to be taken as another evi-

dence of the fact that the mathematical and physical laws governing the production of forgings by the Simonds method were not understood by him, or by whosoever drew his application, at the time the application was made. The words quoted, are, however, of no importance, because the claim contains the additional words "herein described," which, for the purposes of this case, in law, if not in mechanics, so limit the words "by acting upon all parts of the metal bar in spiral lines" that the one expression becomes, for this case, the equivalent of the other. The words "herein described" are more positive in their effect than the ordinary expression "substantially as described," or "substantially as set forth"; and even this expression in many cases is held to limit a claim, and also sometimes to save it. Westinghouse v. Power-Brake Co., 170 U. S. 537, 558, 18 Sup. Ct. 707. At any rate, the words discussed, which state a mere mathematical truism, may clearly be rejected as surplusage, as the words "herein described," in connection with the careful details of the specification, are ample for all the practical purposes of the patent law.

On the other hand, there is nothing in Simonds' earlier patent which properly suggests the invention shown by his later one, in relation to forging the surface of the metal articles to be produced. It is true that the later patent contains the reference which we have already cited, to an application for a patent for the die faces; but this expression is too general to operate as a legal construction of the earlier patent, even if that patent could receive construction from that source. It is also true that the title of the earlier patent uses the word "forging"; but the description of the alleged improvement in the introductory part of the specification, already cited by us, has no relation to any such result. It is also true that the specification contains the words "heated bars, ingots, or fagots"; but this expression may be used with reference merely to shaping, and without reference to forging. There are also found in the specification the words "plastic metal," and both claims of the earlier patent, by their express terms, relate to all metal articles, which expression includes, of course, those made of plastic metal, while the claim in the later patent is limited in express terms to "rolled-metal forgings." It is also true that the patentee shows car axles in the drawings of the earlier patent, and they are especially enumerated in his specification. These, of course, could not be made of anything except iron or steel in condition to be forged or rolled. Nevertheless, taking Simonds' earlier patent altogether, it contains nothing which would justify the court in holding that it does not cover all metals capable of being shaped by dies, or that it in any way concerns the subject-matter of procuring a proper forged surface, so fully treated of in his later one. Necessarily, the fact that the earlier patent covers a field broader than forgings excludes from its purview the function of obtaining a forged surface.

The title of the earlier patent, to which we have already referred, and the history of this subject-matter in the patent office, indicate that the valuable element of Simonds' invention, namely, procuring a forged surface by the use of power dies of the character described, dawned on him after that patent was applied for, and that, when the

application for it was filed, the valuable conception exhibited by his later patent had not taken shape in his mind.   However this may be, it seems clear that, according to the legal rules of construction, there is not enough in all the incidental expressions of the earlier patent to overcome the more positive ones by virtue of which it relates to the shaping of all metals, including those nominally plastic, and that, therefore, it wholly fails to indicate the invention of which the later patent is the exponent.

It does not appear that the Bundy device was ever put to practical use; and, from the time of Bundy to the time of Simonds, dies constructed according to the mechanical laws covering those of both inventors, so far as shaping various articles are concerned, are not found in the art.   Bundy had been buried for more than three-quarters of a century when Simonds gave the world his later patent, which admittedly revolutionized the art of the production by power of articles circular in cross-sectional area.   It would be strange, indeed, if a patent like that of Bundy, buried so long as his, and originating when forging by power rolls and power dies was unknown, could be held to anticipate so important an advance on the subject-matter of forging by power as the invention of Simonds, expressed in his later patent.

We do not find it necessary to consider at any length whether or not Bundy's dies were of commercial use, or were ever practically applied. As said by the court of appeals for this circuit in Packard v. Lacing-Stud Co., 16 C. C. A. 639, 70 Fed. 66, 67, the circumstances must be very peculiar to call for the application of propositions of this character; and the fact that a device had never been put into practical use falls far short of answering as an equivalent for the fact that, in the eyes of the patent law, it was purely experimental.   So, we find it unnecessary to consider whether Bundy sufficiently explained the proportions that his dies ought to assume, because a careful examination of Simonds' patents would show the same lack of definiteness in this particular as found in Bundy's explanations of his alleged invention.   The most that Simonds says is that, for spheres, the cross section of the curved surface at the larger extremity is "about a semicircle," as we have already said; and, further, that, in order that the die faces may work to the best advantage, the diverging angles of the raised surfaces should bear such a relation to the width and pitch of the faces as to prevent the unworked part of the metal from overlapping, and so forth.   One expression in Simonds' specification, as well as his drawings, indicates, though not positively, that the edges of the dies diverge obliquely,—that is, on tangents; but whether or not in practice they so diverge, or whether their divergence is that represented by the equation of an oblique section of a cylinder, and, if yes, of what section or sections, and whether or not this should vary in accordance with the size of the sphere or other article to be rolled, is not made clear by either Bundy or Simonds, and is evidently left to the judgment of those who are practically skilled in the art. In this respect, Simonds, certainly, as well as Bundy, is within the expressions of the supreme court in Cohn v. Corset Co., 93 U. S. 366, 376.   In all this there appears to be an equal indefiniteness on the part both of Bundy and of Simonds, subject, in each case, to apparent

criticism and necessary explanation; and yet, in each case, there is not sufficient evidence in the record to justify the court in finding that this indefiniteness would not be overcome by mechanics of ordinary skill, with reference, in each, to the practical purposes pointed out by the patent. The mere fact that Bundy expressly shows a scale is not of a controlling character with reference to questions of this nature, for it is of little consequence whether the relative dimensions of parts of a device are gathered from a scale expressly shown, or from the apparent proportions indicated by drawings without a scale; and, in either event, the dimensions shown are not to be taken as elements in the claim, unless the patentee has expressly limited himself within the rules stated by the court of appeals in this circuit in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958. This is not the fact, on the present record, with reference to any of the patents in discussion here. However, the discussion of this question of indefiniteness is only necessary for the purpose of supporting Simonds' patents, because the conclusions which we have reached, as have been expressed in this opinion, and will be further expressed in it, are that Bundy's patent is not anticipatory for any of the purposes of this case.

A pertinent limitation of the effect of Bundy's patent as anticipatory matter was explained by the circuit court for the district of Massachusetts in Ford v. Bancroft, 85 Fed. 457, 461, and in the cases there cited, expounding the rule that an inventor is entitled to be protected to the extent of what he practically accomplishes, and no more, and that, in this particular, anticipatory matter which has never gone into practical use is to be narrowly construed; because otherwise, as said by Mr. Justice Brown in Deering v. Harvester Works, 155 U. S. 286, 295, 15 Sup. Ct. 118, the effect given to an invention of doubtful utility "would operate rather to the discouragement than to the promotion of inventive talent."

In consideration of the facts which we have stated, it would be in violation of all sensible rules to hold that the Bundy device, which, at the most, had in view only shaping "bullets and other shot" from metal normally plastic, or made plastic, anticipated the very important invention of Simonds, as shown in his later patent, and as we have described it. It is true that the specification of Simonds' patent lacks clearness and definiteness in other particulars than those to which we have referred. Among other things, the complainant maintains that while Bundy exhibited, in connection with the diverging sides of the grooves of his dies, only a cutting edge adapted to operate on a plastic metal like lead, Simonds describes "oblique, diverging, reducing, and spreading surfaces," of which surfaces some are claimed to operate to shape the blank, and others to forge the surface. But it is impossible from the specification, or, indeed, from any portion of the proofs in the record which have been brought to our attention, to discriminate accurately the various elements of Simonds' "surfaces," intended to be represented by the various words, "diverging, reducing, and spreading." Yet, however this may be, it is plain that Simonds not only conceived the idea of forging metal articles circular in cross-sectional area, by methods analogous to those of the

ordinary power rolls producing metal forgings, but that he also devised and exhibited in the specifications and drawings of his later patent a practical, working machine, necessary and competent to accomplish his idea.

Looking at this, we might even assume that Simonds had been, in fact, given the Bundy device and patent, and was familiar with them; and yet it would be too plain to require further exposition that there was enough of the highest merit in what Simonds accomplished and expounded by his later patent, not only over the Bundy device and patent, but also over his own ealier patent in suit here, so far as anything is sufficiently exhibited by it. Even if there were nothing of value in Simonds' "oblique, diverging, reducing, and spreading surfaces,"—as to which we have explained there is a certain indefiniteness,—yet the application of the laws involved in the dies described in Bundy's patent, and in Simonds' earlier patent, to the new use of which Simonds' later patent is an exponent, and the arrangement and exhibition of the mechanism required to accomplish his purpose, would clearly be invention, within the terms of the principles and cases cited by the court of appeals for the First circuit in Heap v. Tremont & Suffolk Mills, 27 C. C. A. 316, 82 Fed. 449, 456, et seq.

It is also convenient in this connection to refer to the well-known case of Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, and to apply the expressions of Tilghman v. Proctor, 102 U. S. 707, 711, to the extent of paraphrasing, by saying that, whosoever might have been engaged in making "bullets or other shot" under the Bundy patent, if there were any such, never derived the least hint from any phenomenon which Bundy exhibited, intentionally or accidentally, in regard to the practical methods of producing forged surfaces, shown by Simonds' later patent. If there could be any question of anticipation, it would be as between the Bundy patent and Simonds' earlier patent, and not as between either of them and Simonds' later patent. We have, however, shown that Simonds' earlier patent is not sufficient to cover dies for producing spheres, nor Bundy's patent sufficient to cover dies for producing boot calks circular in cross-sectional area. Therefore, as, on the whole, we are of the opinion that, so far as concerns all the essential issues in this case, there was invention in Simonds' earlier patent over Bundy's device and patent, and invention in Simonds' later patent over both, it is unnecessary for us to consider at length any question of anticipation based on sections 4886 and 4920 of the Revised Statutes.

We have no occasion here to add to the voluminous discussions of the patentability of processes, the last of which is found in Westinghouse v. Power-Brake Co., 170 U. S. 537, 556, 18 Sup. Ct. 707, already referred to. Simonds' later invention comes clearly within the statutory word "art," in that it involved the application of knowledge or science to effect a desired practical purpose, and did effect it; and without involving ourselves in those discussions, or in any attempted exposition of the meaning of the word "method," used by Simonds in his claim, we can perceive no reasonable doubt that the subject-matter of his later patent is within the constitutional provi-

90 F.—14

sion, and the legislation of congress intended for the encouragement of meritorious inventors.

The only remaining question on which we need touch grows out of the fact that Simonds was not content with a single patent, but took out the two which are in issue here. It is pressed on us that Simonds' entire invention was covered by the patent which issued the earlier, and that, therefore, the second patent is void. This claim gives opportunities for discussions in several directions; but we need not pursue them, barring, however, the propriety of distinguishing between this case and Palmer v. Manufacturing Co., 84 Fed. 454, 457, decided by the circuit court for the district of Massachusetts. In that case, each of the two patents was really for a machine, the machine in the earlier patent merely needing well-known connections to accomplish the results of the machine in the later patent; so that the two patents were clearly for the same subject-matter. But the case at bar is not one of this kind, as Simonds' earlier patent was clearly for mechanism, and the later one clearly for an art.

For a long time after Rubber Co. v. Goodyear, 9 Wall. 788, 796, in connection with Suffolk Co. v. Hayden, 3 Wall. 315, 378, if not before the date of the expressions found in those cases, it was understood that an inventor might lawfully divide his invention so far as to take out independent patents for his machine, his process, and his product, provided the applications were all pending before either patent issued, or were pending otherwise under such circumstances as to save him from the abandonment implied in taking out a patent for less than his whole invention. This statement is sustained historically by Judge Colt in Eastern Paper-Bag Co. v. Standard Paper-Bag Co., 30 Fed. 63, although some of the dicta in that case as to presumed abandonment may need modification in view of the later decisions of the supreme court,—among the rest, Underwood v. Gerber, 149 U. S. 224, 230, 13 Sup. Ct. 854, and Deering v. Harvester Works, 155 U. S. 286, 296, 15 Sup. Ct. 118.

The proposition that independent patents may certainly be taken for the machine, the art, and the product involved in the same fundamental invention, when applications therefor are pending at the same time in the patent office, has been very much embarrassed by the expressions of Mr. Justice Blatchford in Lock Co. v. Mosler, 127 U. S. 354, 361, 8 Sup. Ct. 1148, and in Underwood v. Gerber, *ubi supra*. In each of those cases it appeared that the various applications were filed at different times in the patent office; yet, although all were pending before any patent issued, only the earlier patent was sustained. In Lock Co. v. Mosler, at page 361, 127 U. S., and page 1151, 8 Sup. Ct., Mr. Justice Blatchford observes that, with reference to the patent for the "process or method," which was the later one issued, there was no patentable invention "when it was applied for," in view of the application for the product, which was then pending, but on which a patent subsequently issued. Apparently on this account, as well as, perhaps, for other reasons, the patent for the "process or method" was held to be invalid. Inasmuch as, under the statutes relating to patents, the date of invention is not necessarily

the date of the application, it might, perhaps, well be claimed that Mr. Justice Blatchford fell into an error in this expression. Nevertheless, we would, perhaps, be concluded if the facts were the same; but, in view of the conclusion which we have reached, to the effect that there was invention in Simonds' later patent over anything which preceded it, there is no difficulty in sustaining it, notwithstanding the expressions of Mr. Justice Blatchford to which we have referred, and the decisions of the supreme court in which they resulted, and notwithstanding any question which may be raised whether or not the law will sustain the division of a fundamental invention in such way as to allow distinct patents for a machine, an art, and a product, or for two of them, in the manner which we have stated.

We therefore come to the conclusions that Simonds' earlier patent is valid, and has been infringed, as to the boot calks, with reference to which the defendants may be charged jointly, but not as to spheres; and that Simonds' later patent involves invention over anything which preceded it, including his own earlier patent; and that it has been infringed by the defendants with reference to boot calks and spheres, so far as the defendants may be charged jointly; and a decree will be entered in accordance with these conclusions.

Let there be a decree, under rule 21, in accordance with the conclusions of the court in its opinion passed down this day; all questions of costs being reserved until the final decree.