PALMER et al. v. JOHN E. BROWN MFG. CO.

(Circuit Court of Appeals, First Circuit. March 16, 1899.)

No. 244.

PATENTS—DISTINCT INVENTIONS—TWO PATENTS HELD NOT FOR SAME INVENTIONS—MACHINE FOR SEWING OR QUILTING FABRICS.

The Palmer patent No. 308,981, for a machine for sewing or quilting fabrics, compared with the earlier patent, No. 304,550, to the same inventor, for a "mechanical movement," and held to be for a different, distinct, and patentable invention; and also construed and held infringed as to claims 9, 10, 14, 16, 18, 19, 22, and 24.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Edwin H. Brown, for appellants.
James E. Maynadier, for appellee.

Before COLT, Circuit Judge, and BROWN and LOWELL, District Judges.

BROWN, District Judge. This suit is based upon letters patent No. 308,981, granted December 9, 1884, to Frank L. Palmer, and described as for a machine for sewing or quilting fabrics. The circuit court found this patent invalid, on the ground that what was claimed therein was simply an application to an appropriate use of what was claimed in an earlier patent to Palmer (304,550, dated September 2, 1884), without the development of the inventive faculty in making the application. There is no doubt that Palmer was, in fact, the inventor of the quilting machine described in the patent in suit, and that his invention was of great ingenuity, and of great importance in the art of machine quilting. His machine accomplished work that was formerly done only by hand, and the evidence of invention afforded by the result of its application to the practical art is of high order. He was the first to produce by machinery scroll quilting in lines running freely in any and all directions,—an advance of great importance in the art. We agree with the opinion of the circuit court that Palmer's patent, No. 185,954 is not anticipatory, since it lacked the "universal movement in any and all directions," which is the characteristic feature of his patent in suit. Had Palmer been content to take out only the patent in suit, we think there would be no doubt as to its validity. The difficulty in the present case arises from the patent No. 304,550, granted to Palmer about three months earlier than the patent in suit. This patent is for a "mechanical movement," described in the specification as "more particularly intended for producing the change in .relative position between an implement or tool (such, for example, as a molding or other cutter or cutting tool, or the needle of a sewing machine) and the article to be operated upon by the implement or tool (such, for example, as a piece of wood or other material to be molded or cut, or a piece of fabric to be sewed, quilted, or embroidered)." Claim 7 is as follows:

"The combination, with a rack or track in pattern form and a positively operating engaging device acting thereon and capable of bodily movement relatively thereto, of carriages supporting said device, movable in directions transverse to each other, and one mounted upon the other, whereby provision is afforded for the movement of said engaging device along the rack or track by its engagement therewith, substantially as herein described."

This "mechanical movement" is employed in the machine of the patent in suit as a part of the claimed combination. Upon Palmer's original application for a patent for a machine for sewing or quilting fabrics this "mechanical movement" was made the subject of a separate claim. The date of this application was November 23, 1883. The other claims of present importance relate to the combination of this "movement" with the mechanism of a quilting machine, including

a sewing machine and work holder of a construction permitting them to co-operate with the "movement." The patent office, however, considered the application to embrace two inventions, and upon the requirement or suggestion of the office, the claim for the "movement" was withdrawn from the application of November 23, 1883, and made the subject of a new application, filed June 21, 1884. Upon the later application was issued the earlier patent, No. 304,550, on September 2, 1884. Upon the earlier application was issued the later patent, No. 308,981, now in suit.

The defendant contends that Palmer made but one invention, namely, a "pattern mechanism," or a feed mechanism which produces a pattern; and that he did not make two inventions, namely, that pattern mechanism, and, in addition, the combination of that pattern mechanism with a sewing machine and its work holder. If it is true that both patents are for the same invention, it follows that Palmer, by taking the patent earlier issued, left nothing which could be made the subject of a second patent. Our inquiry, then, will be: Are the two patents for the same invention? Looking first to the letters patent themselves, and comparing their claims, we are unable to say that the combination claimed in the earlier is identical with that claimed in the later, since the later specifically claims elements not enumerated in the earlier. As the claims are not co-extensive, the fact that a given element is common to both may be of little consequence. Comparing next the functions, we still fail to find identity, since it is the function of one to produce a finished and useful product, while the function of the other stops far short of this, and produces merely motion in a predetermined or pattern form. From inspection of the patents alone we are unable to say that the patent office, by granting patent No. 304,550, exhausted its power to grant No. 308,981. The test of identity afforded by a comparison of the claims of the two patents, however, is not conclusive. We must be satisfied further that there are substantial differences, not merely varying descriptions of one invention, or descriptions of a single invention in different applications to use. As said in Miller v. Manufacturing Co., 151 U. S. 186, 198, 14 Sup. Ct. 310, 315:

"It must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth and scope of the claims of each patent."

At the date of the application for the patent in suit neither the prior art (represented, so far as appears in evidence, solely by Palmer's earlier patent, No. 185,954, for a machine without the universal movement characteristic of the patents under consideration) nor any prior patent disclosed anything suggestive of the combination of the patent in suit. There is no warrant in the evidence for the claim that the mechanical movement suggested the combination. The "movement" was evolved by Palmer while working in the art of quilting, and as a means subordinate to the purposes of that art. It seems evident that throughout the inventive process which led to the final successful result Palmer's object was to improve the art of

machine quilting, and that the movement was conceived as a sub-combination, or as a member of a combination in which a sewing machine was a necessary element. Complainant's expert, Mr. Park Benjamin, points out—fairly, as we think—the error of the assumption that the invention of the patent in suit was made by adding the sewing machine and work holder to the "movement," and of the erroneous implication that the "movement" was first in the art. Our view as to the error of this implication disposes also of the suggestion that the earlier application was for letters patent for a mere appropriate use of an independent invention. It would be more just to say that Palmer's knowledge of the superiority of the designs of the handwork, and of the comparative imperfections, in design and workmanship, of the former machines, led to the desire for a machine that would overcome the limitations of the earlier machines and the imperfections of their product, and that this desire led to the conception of his sewing machine so reorganized with other elements in a new combination that it could sew lines in any and all directions. The record evidence of the inventor's progress in the art and of his final achievement justifies this view, rather than the view resulting from a tearing down of his structure, and an assumption that the easy process of rebuilding it corresponded to his inventive act. The architect is entitled to credit for more than the skill necessary to build according to his perfected plan. The language of Judge Wallace in Thomson-Houston Electric Co. v. Elmira & H. Ry. Co., 18 C. C. A. 145, 154, 71 Fed. 396, 405, seems especially applicable to this case:

"The test of identity is whether both, when properly construed in the light of the description, define essentially the same thing. When the claims of both cover and control essentially the same subject-matter, both are for the same invention, and the later patent is void. A machine or structure may embody several different inventions. There may be subcombinations in a machine which are new and useful, and operate conjointly to perform some subordinate function. Such a subcombination, if not patented by a claim, might be appropriated by another without infringing a patent for the machine. Being for a different invention, it is the proper subject of a distinct patent. While two or more inventions residing in the same combination or structure may be covered by a corresponding number of claims in a single patent, the law does not require them all to be claimed in the same patent, and the inventions may, at the option of the patentee, be secured by different patents. It is quite immaterial that both inventions originate at the same time, and from a single conception. In Cochrane v. Deener, 94 U. S. 780, the court said, 'One invention may include within it many others, and each may be valid at the same time.' In all such cases, if the inventions are truly separable, the inventor is entitled to a monopoly for it, although neither could have been discovered and made available without the other."

The view of the circuit court in the present case is further explained by the opinion in Simonds Rolling-Mach. Co. v. Hathorn Mfg. Co. (July 30, 1898) 90 Fed. 201. Speaking of the present case, the learned judge who wrote both opinions said:

"In that case (Palmer v. Manufacturing Co., 84 Fed. 454, 457) each of the two patents was really for a machine, the machine in the earlier patent merely needing well-known connections' to accomplish the results of the machine in the later patent; so that the two patents were clearly for the same subject-matter."

We do not think, however, that it is at all obvious that, if the mechanical movement as claimed in the patent first granted were given to one of ordinary mechanical skill, who was familiar with the art of machine quilting, he could have produced the machine of the patent in suit without such a degree of ingenuity in making the application of the "movement" to the art of quilting as would amount to invention. Given a device capable of the production of universal movement, there would be still necessary the perception that this movement could be so applied in the art of quilting as to produce the results of the machine of the patent in suit, and the further perception of such a reorganization of the elements of the machines of the prior art as would require, before a useful result could be produced, changes of a radical nature in the work holder, in the means of holding and presenting the work to the needle, and in the sewing machine; and also the devising of suitable driving mechanism for operating the work holder and sewing machine in proper synchronism. The conception of a mechanism capable merely of producing motion in a predetermined form, and the conception of this mechanism, combined, with other elements, in a machine producing work theretofore done only by hand, are distinct. Suffolk Co. v. Hayden, 3 Wall. 315.

We think there is force in the following suggestion of the counsel for the complainant:

"Clearly, the invention of the mechanical movement, being merely a producer or transformer of motion, is not an invention in the art of quilting. Therefore if defendant's contention is true that all of Palmer's invention is embraced in this mechanical movement, he made no invention in a quilting machine, notwithstanding he devised one so important that it revolutionized the art of quilting."

Had the "movement" been in the prior art, we think that Palmer's claims to the protection by letters patent of his quilting machine would be well founded. As he has produced not only a quilting machine, but a part of that machine which may be used in other machines, we see no reason why, by properly seeking protection for all that he has invented, he should be deprived of the protection of letters patent for that which he regards as his chief invention commercially considered. We are, upon the whole, of the opinion that the two patents are for two distinct inventions, and not for one invention; that each describes a true combination; that the combinations differ widely in their elements and in their functions, and that the patent in suit is not for a mere use of the invention covered by No. 304,550, but for uses of which the invention of that patent is incapable; and that a correct expression of the relation of the two patents is that the invention covered by one is merely an element in a combination covered by the other. We therefore hold that the patent in suit is valid.

The question of infringement follows. Claims 9, 10, 14, 16, 18, 19, 22, and 24 are involved. It is satisfactorily established that the defendant's machine performs the same work, and that it has the capacity for scroll quilting that gives the machine of the patent in suit its chief value. In view of our finding that Palmer's two patents,

304,550 and 308,981, are independent, we think that the only question of importance upon the issue of infringement relates to the "movable supports." The defendant's position is set forth in the testimony of its expert, Mr. Metcalf:

"Defendant has discarded the supports described in these patents [304,550, 308,981], namely, the fixed track, the carriage on that track, the second track on that carriage, and the second carriage on that track, and uses instead of them newly-invented mechanism which consists of a simple table on castors, which supports the fabric holder, but has nothing whatever to do with restraining its horizontal movement, and a system of rods and guides which restrains the fabric holder from rotating about a vertical axis, but has nothing to do with supporting it."

We think this is disposed of effectually by the testimony of Mr. Benjamin, as follows:

"That is evidently based on the assumption that movable supports in any machine embodying complainant's invention must, of necessity, in all their parts operate to hold up the fabric holder against the action of gravity. In other words, his contention appears to be that, if any member of the movable support (whereby the fabric holder is permitted, while in the machine, to follow the movements of the pattern) does not somehow actually take the weight, or some part of the weight, of that fabric holder upon itself, then the movable support of 308,981 is not present. All of the supports (according to Mr. Metcalf) must restrain the fabric holder from moving downward towards the earth; but, even if the support does operate to restrain the fabric holder from moving in that direction, if some part of it can be recognized as operating to restrain it also from rotating on a vertical axis, then the complainant's supports are not present. I certainly cannot subscribe to that doctrine. So long as the mechanism which supports the fabric holder permits it to follow the guidance of the pattern, it is immaterial how the subsidiary functions of sustaining the weight of the fabric holder, and of preventing the rotation of that fabric holder about a vertical axis are distributed among the parts which make up that mechanism. Such a distribution will be governed simply by the exigencies of the especial conditions introduced into either machine."

We cannot regard the "supports" of the defendant's machine as the simple table without giving undue prominence to the mere sustaining of weight, and without disregarding the lateral support necessary for the proper operation of the mechanism. The supports of the defendant are the table, with its connections, whereby both vertical and lateral support are given. What the defendant terms "restraining devices" are lateral supports, which support the fabric holder in such a way that only the desired directions of movement are permitted. The inversion of parts, redistribution of weight, and redivision of work among the parts are productive of no advantage, produce no change of result, and are merely colorable changes. A patent of the primary character of that in suit cannot be evaded thereby.

The decree of the circuit court (84 Fed. 454) is reversed, and the cause remanded to that court with a direction to enter a decree in favor of the complainants sustaining the validity of claims 9, 10, 14, 16, 18, 19, 22, and 24 of the complainants' patent in suit, and adjudging that said claims have been infringed by the defendant, and ordering a reference to a master to take an account of profits and damages in respect to such infringement, and awarding to the complainants a perpetual injunction in respect to the claims above

mentioned; and to take such further proceedings as shall be according to law, and not inconsistent with this opinion. The costs of this court are adjudged to the appellants.