### PALMER et al. v. LANDPHERE.

(Circuit Court, D. Connecticut. October 8, 1902.)

No. 881.

1. PATENTS—INFRINGEMENT—QUILTING MACHINES.
    The Palmer patents, No. 308,981 and No. 308,982, for machines for quilting fabrics, *held* infringed.

2. SAME—CONTRIBUTORY INFRINGEMENT—SALE OF PARTS.
    One who bought and resold at a profit separate parts of infringing machines, which he was employed by the purchasers to set up, cannot avoid liability as a contributory infringer on the ground that he was merely selling his labor as a skilled workman, and where he had notice of the infringement he may be required to account.

In Equity. Suit for infringement of letters patent Nos. 308,981 and 308,982 for machines for quilting fabrics, granted December 9, 1884, the former to Frank L. Palmer, and the latter to William H. Palmer, Jr. On final hearing.

Dickerson & Brown, for complainants.
J. E. Maynadier, for defendant.

PLATT, District Judge. The letters patent upon which this suit is based are Nos. 308,981 and 308,982, issued on the 9th day of December, 1884, respectively, to Frank L. Palmer and William H. Palmer, Jr., and controlled by the complainants. Defendant is charged with having infringed claims 14 and 24 of patent No. 308,981, and claims 2, 3, 4, 12, 15, and 20 of patent No. 308,982. The defense is noninfringement.

I need make no extended comment upon the state of the prior art, nor upon infringement. The contentions involved in such a discussion have been fought out thoroughly, and to a finish, in the Crefeld Mills Case (C. C.) 57 Fed. 221, and in the case in the First circuit (35 C. C. A. 86, 92 Fed. 926), when the circuit court of appeals overruled Judge

¶ 2. Contributory infringement of patents, see note to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.

Putnam ([C. C.] 84 Fed. 455) on the only question which troubled him, sustaining therein fully and unequivocally the position taken by complainant.

The discussion before me seems to be almost entirely a threshing over of old straw, although I am bound to confess that counsel for defendant wielded the flail with commendable vigor. After waiting for the dust to settle, I find nothing positively new except a citation of patent No. 313,230. The defendant asks me to hold that that patent acts as an estoppel. It is so clearly a subsidiary patent dominated by the patents in suit as to demand nothing more than a passing glance.

As the work which can be done with the machine described in No. 313,230 can be done just as well by machines constructed in conformity to the description of the patents in suit, and taking into account the disadvantages in amount of power required and in the amount of room needed, it seems to go without saying that, if there was anything patentable in the combination described in No. 313,230, it was a subsidiary improvement dominated by the patents in suit.

Defendant also contends that he gained his knowledge of the machines while he was employed as a mechanic by the owners of the patents in suit, and that he had a right, after leaving their employ, to enter the employ of a rival concern, and fit up that concern with the patented machines, and that he could continue shifting his employment, and in each case of new service furnish the new rival with his personal knowledge, so as to enable that rival to infringe, in defiance of the patents sued upon. This argument carries with it the necessary corollary, that in each case the defendant remains simply and absolutely a mere employé, working for a specific return in wages as compensation for his labor. It is obvious that I cannot know what evidence Judge Townsend had before him when he overruled a plea setting up substantially the same defense, in this same suit, but I should infer from his opinion ([C. C.] 99 Fed. 568) that it contained many of the ingredients which have been served up to me on final hearing. I avail myself of the judge's labor to fortify my views. But, in addition to that, a diligent search of the record, and a careful examination of the proofs, force me to reach a different conclusion from that contended for by the defendant.

I find that he was, without question, selling the different articles which enter into the construction of the infringing machines at a profit. Under all the evidence it is idle for him to claim the contrary. How can he contend that when he received lump sums by check he can now subdivide such payments into an original actual cost, plus $15 a day for his labor?

His entire line of conduct since he left the Palmers has been that of a malicious injurer. There is no evidence to warrant the statement that he was discharged without good and sufficient reason. Under his original employment he learned the details of the quilting business, and with that knowledge he went forth into the world. Starting with a place of business of his own, and, in connection with that, using Diamond & Stuard as a vantage point, he has left the marks of his unfair methods behind him in various places. His dealings with the Cold-Blast Feather Company, the California Cotton Company, and

with John Burton for the Queen Down Quilt Manufacturing Company, amply sustain the conclusion at which I have arrived.

And at the end the defendant contends that the complainants are not entitled to an accounting. Complainants set up in their bill these two averments:

"And your orators further show unto your honors, on information and belief, that said defendant was duly notified of said infringement and of the rights of your orators in the premises, and continued after such notice to make, use, or vend the article so patented, and refused to desist from said infringement, and still continues so to do.

"Your orators further show unto your honors, on information and belief, that the said defendant has had notice of said infringement, and of the rights of your orators in the premises, but has disregarded said notice and refused to desist from said infringements, and still refuses so to do."

On March 11, 1901, when final proofs were being taken before John A. Shields, Esq., special examiner, among other things stipulated and agreed upon, defendant's counsel admitted that "defendant was notified of infringement herein, as notification is alleged in the complaint."

After his admission of notice on record, the defendant ought not to be permitted to go scot free. Having indulged in such conduct as has been portrayed above, there seem to be no equities under which he can seek shelter. Let the matter go to a master for accounting.