INDUSTRIAL MFG. CO. v. WILCOX & GIBBS SEWING MACH. CO.

(Circuit Court of Appeals, Third Circuit.    December 26, 1901.)

No. 4.

PATENTS—INFRINGEMENT—SEWING MACHINE TRIMMER.

The Bigelow patent, No. 263,467, covered a combination, with a particular class of sewing machines, of any automatic trimmer to trim ahead of the sewing; one form of such trimmer being shown in the drawings and described in the specification.    Patent No. 341,790, subsequently granted on a division of the same application, claimed a combination with the sewing mechanism of any sewing machine of a trimmer described, which was substantially that shown in No. 263,467.    Held, that the trimming device so shown in the earlier patent was an essential element of the combination therein claimed and could not be made the basis of the later patent, and the latter was therefore void.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 110 Fed. 210.

A. B. Stoughton, for appellant.

A. C. Paul, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and KIRK-PATRICK, District Judge.

KIRKPATRICK, District Judge. The bill of complaint in this cause was filed charging defendant with infringement of letters patent No. 341,790, dated May 11, 1896, which is founded upon a divisional application of an original application, filed June 5, 1879, and patented August 29, 1882, No. 263,467. The patentee states that the invention relates to "trimming" devices on sewing machines, in which two shear cutting edges, one stationary and the other moving or movable, are employed.

The claims of the patent are four in number, and are as follows:

"(1) In a sewing and trimming machine, and in combination with the stitch forming mechanism thereof, a shear trimmer comprising a fixed and movable cutter, having for its movable cutter a bar or plate provided with the cutting edge at one end, and being adjustable lengthwise on its carrier, to regulate the position of said cutting edge relatively to the sewing mechanism and to the cutting edge of the co-operating cutter, substantially as described.

"(2) In a sewing and trimming machine, and in combination with the stitch forming mechanism thereof, a shear trimmer having a movable cutter or blade, and a stationary co-operating cutter or blade, each adjustable independently of the other, to regulate the position of its cutting edge relatively to the sewing machine and to the edge of the co-operating cutter, the stationary cutter or blade being formed of a bar or plate with the cutting edge at one end, and the two cutters having their edges held in contact by spring pressure, substantially as described.

"(3) In a sewing and trimming machine, and in combination with the stitch forming mechanism of the sewing machine and the movable blade or cutter of the trimming device, a stationary cutter formed of a bar or plate provided with the cutting edge at one end, and being adjustable lengthwise, to regulate the position of said cutting edge relatively to the sewing mechanism and to the cutting edge of the movable cutter, said cutters having their edges held in contact with each other by spring pressure in cutting, and thereby having a shear action suited to divide knit goods and other textile fabrics, substantially as described.

"(4) In a sewing and trimming machine, and in combination with the work plate and stitch forming mechanism of the sewing machine, and with the movable cutter of a shear trimming device, a stationary co-operating cutter formed of a bar or plate and a support below the work plate, to which support said bar is secured, said bar having the cutting edge at its upper end and being adjustable lengthwise, to regulate the position of said cutting edge relatively to the work plate and stitch forming mechanism and to the cutting edge of the movable cutter, substantially as described."

What is claimed to be new consists, in combination with the stitch forming mechanism of any sewing machine, of a shear trimmer composed of a fixed and movable cutter held together by spring pressure, said cutters being adjustable lengthwise, independently of each other, so as to regulate the position of their cutting edges to the sewing mechanism of each other, substantially as described.

The record shows that at the same time that application was made for the patent in suit the patentee made application for another patent, which was granted, and is known as No. 263,467, for an invention relating to a trimming attachment to the class of buttonhole and zigzag or regular stitch sewing machines which should operate to prepare, in any direction across the fabric to be overseamed, a suitable edge by turning said fabric in advance of overseaming the same.

The device, which is shown to accomplish the purpose, is described at length in the specification, and lacks only adjustability to be identical with that which is claimed to be new in the patent in suit. One claim of this patent reads as follows:

"In combination with the stitch forming mechanism of an overedge sewing machine, an automatic trimmer arranged to act in advance of said mechanism, and in the line of the seam, so that said mechanism can operate to lay its stitches across or over the edge or edges cut by said trimmer, substantially as described."

The new thing patented in No. 263,467 (division "A") was a combination of the stitch forming mechanism of an overedge sewing machine with an automatic trimmer to act in advance thereof, one form of which trimmer should be substantially as described. It is not for a combination of stitch forming mechanism of an overedge sewing machine with a trimmer not described or its equivalent. The patent was granted, not for the idea of trimming, but as the means employed to accomplish the result. One of these means is described and set forth in the specification, and is, except as to adjustability, the same as set out in division "B," the patent in suit.

It is urged that because the patentee says, in his division "A" application, that he does not limit himself to the means described therein for the accomplishment of his purpose, he thereby excludes those means. As we construe the phrase, it shows a clear intention to include within the scope of the patent all forms of trimmers existing or to be devised, and surely the only form shown. That this was the interpretation given to it at the patent office is evidenced by the fact that the device of the Borton patent, No. 263,660, which was brought into interference with Bigelow, No. 263,467 (division "A"), though it did not have the specific device shown in the Bigelow application, was held to be an infringement thereon. Can it be concluded that if Borton had had the specific device shown in the drawings of Bigelow the same result would not have been reached? Of course not. The claim of No. 263,467 (division "A") was broad enough, not only to include the trimming device shown therein and referred to as substantially as described, but its equivalent, shown in the Borton patent. Moreover, the proof is that the specific trimmer described in patent No. 263,467 was and is essential to the successful operation of the apparatus there shown; that it is a necessary element of the combination there claimed. Without that specific trimmer, the patent was worthless. As has been said, patent No. 341,790 (division "B") is not for the trimmer described therein as a distinct element, but for a combination which includes a trimmer which performs the same functions as the trimmer described in No. 263,467. We fail to find any patentable improvement disclosed in the trimmer described in No. 341,790 (division "B") upon the trimmer described in the specification of No. 263,467 (division "B"). It was in no sense "a separate invention, distinctly different and independent from that covered by the first patent," and therefore falls within the principle of Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. It seems clear that the combinations of the division "B" patent, as respects the trimmer, fall within the broad claims of patent No.

263,467 (division "A") in relation thereto, and could have been allowed therein. From what has been said it follows that the trimmer shown in the drawings and described in the specifications of patent No. 263,467 (division "A"), when used in combination with the sewing mechanism described therein, was protected from public use by the issuance of said patent, and that when said patent expired by limitation the said trimmer became free to the public. At the same time the trimmer of the patent in suit (division "B"), which discloses no patentable improvement upon the one described in patent No. 263,467 (division "A"), also became free to public use when combined with the sewing mechanism of the sewing machine described therein. Exhibit "Defendant's Machine" shows the sewing machine referred to in patent No. 263,467, and the trimmer claimed in No. 341,790. If the patent No. 341,790 (division "B") can be sustained, it must be upon a construction so narrow that the defendant's device does not infringe.

The decree of the circuit court must be reversed, and the record remitted, with instructions to dismiss the complainant's bill.