WESTINGHOUSE ELECTRIC & MFG. CO. v. NATIONAL ELECTRIC CO.

(Circuit Court, E. D. Wisconsin. February 20, 1905.)

PATENTS—INFRINGEMENT—ELECTRIC MOTORS.

The Tesla patents, Nos. 381,968, 381,969, 382,280, and 382,281, for electric motors, construed, and *held* infringed.

In Equity. Final hearing of bill upon Tesla patents, Nos. 381,-968, 381,969, 382,280, and 382,281, issued of like date, May 1, 1888. The alleged infringing device is a synchronous motor and alternating current polyphase generator, thus distinguishable from the nonsynchronous motors involved in prior adjudications under the broad patents, Nos. 381,968 and 382,280.

Kerr, Page & Cooper and Edward Rector, for complainant.

Winkler, Flanders, Bottum & Fawsett, for defendant.

SEAMAN, Circuit Judge. While the validity of all the patents is assailed by the answer and testimony on the part of the defendant, the only issue pressed at the hearing and in the briefs by way of defense is noninfringement. That issue, however, rests on consideration of the prior art, and the difficulties in the way of its solution are not much simplified by passing the question of validity. Indeed, in the light of the opinions which have been handed down, discussing both prior art and alleged anticipations, and upholding the broad patents, Nos. 381,968 and 382,280, I am impressed with the view that the character of the invention and validity of those patents may justly be treated as well established. The opinions referred to are instructive as well for the purposes of the present issue of infringement, though not involving synchronous motor infringement. The case against New England Granite Co. (C. C.) 103 Fed. 951 (on affirmance 110 Fed. 753, 49 C. C. A. 151), is the leading one, with that of Royal Weaving Co. (C. C.) 115 Fed. 733, in line; and other reported decisions are Tesla Electric Co. v. Scott & Janney et al. (C. C.) 97 Fed. 588; Westinghouse E. & M. Co. v. Dayton Fan & Motor Co. (C. C.) 106 Fed. 724; Dayton Fan & Motor Co. v. Westinghouse Electric & Mfg. Co., 118 Fed. 567, 55 C. C. A. 390; Westinghouse E. & M. Co. v. Dayton Fan & Motor Co. (C. C.) 106 Fed. 729; Westinghouse E. & M. Co. v. Catskill Illuminating Co. (C. C.) 110 Fed. 377; Westinghouse E. & M. Co. v. Hiram C. Roberts et al. (C. C.) 125 Fed. 6; Westinghouse E. & M. Co. v. Mutual Life Insurance Co. (C. C.) 129 Fed. 213; Westinghouse E. & M. Co. v. Stanley Instrument Co., 133 Fed. 167, 68 C. C. A. 523. With the excellent and thorough review of the earlier patents and prior art, and the well-considered concurrent view of the novelty and scope of the Tesla inventions covered by the patents, thus appearing in several of these opinions, I am relieved of any need to attempt an analysis of the general showing in the present case, which departs from the prior cases only in respect of the application of the invention to the synchronous motor type. Although the inquiry thus presented is not free from difficulty, involving abstruse discussion and distinctions in the electrical art which are perplexing to the nonexpert understanding and are not clarified by the many pages of conflicting expert testimony, the arguments at the bar were clear and well directed, and I am convinced that the issue as now presented is within narrow compass and governed by tests for its solution which are not complicated. Favored with opportunity to take up the final consideration without delay, I deem it just to all interests (with the patents soon expiring) to pass the decree in conformity with my conclusions thereupon, without ex-

tended discussion of the interesting questions involved, as the time remaining at my disposal before interlocutory decree should be entered, to be seasonable for appeal, is now quite limited.

The defendant's contentions are, in substance, that the Tesla invention, embodied in each of the patents, is the "rotating field mode of operation," which is "the production by the conjoint effect of out of phase currents of a progressive shifting of the polarity," and thus "identical in its effect with that of a rotating physical magnet"; that it is limited to a self-starting motor so operated, and both by the terms of the patents and the state of the art the defendant's synchronous motor with direct current excitation is not within the invention; that the defendant's synchronous motor is simply a reversed "two-phase alternating current dynamo of the prior art used as a generator," adapted to alternative use; and that the claims of patents 381,969 and 382,281, which bring in "direct current excitation producing synchronous operation," must be limited to such use "after the motor is started by the Tesla means and method and brought up to speed." If the invention is so limited by the prior art, it is plain that the defendant escapes infringement. On the other hand, if not so restricted, it is equally clear that the claims of the patents are broad enough to reach the defendant's means and method of operation. The Tesla discovery for which these patents were granted revolutionized the art of electrical power transmission, as well demonstrated in the record from both judicial and scientific standpoints. Judge Townsend's definition in reference to the generic patents in the New England Granite Case, repeatedly approved by other courts, is adopted for this consideration, namely:

"Tesla's invention, considered in its essence, was the production of a continuously rotating or whirling field of magnetic forces for power purposes, by generating two or more displaced or different phases of the alternating current, transmitting such phases, with their independence preserved, to the motor, and utilizing the displaced phases as such in the motor."

So viewed, the patent monopoly was rightly granted for its brief term to the use of the means and methods thus discovered. While it could not exclude the known uses of the prior art, it is surely entitled to be protected against like motor structure and mode of operation, not clearly disclosed in the prior art, and the patent claims to that end must be fairly construed in conformity with the rule applicable to such inventions. I am of opinion, therefore, that the several contentions for the defendant are either without force or untenable for the following reasons: Whether the effect of the Tesla invention, in its production of the "whirling field of magnetic force," is identical with that of a rotating physical magnet, as argued by experts and counsel, does not impress me as material to this issue. Nor does it seem material that in the one form of motor "the rotation is produced by the unaided effect of alternating out of phase currents," as described by counsel, and that, so applied, a self-starting motor is obtained. The discovery was of means and method in the polyphase rotating field motor to produce the whirling field of force, and employment thereof was patentable with or without direct current excitation of the armature or secondary element. So the fact that its use produced a self-

starting motor without the aid of such excitation cannot alone serve to limit the invention to that effect, and I find no such limitation in the terms of the patent. The quotations from the arguments of counsel and experts for the complainant in prior cases, urging the distinction of this self-starting effect in reference to the application of the generic patents to nonsynchronous motors, are without force in the present controversy, and it is unnecessary to ascertain their consistency or inconsistency with the interpretation sought on this hearing. Unless limitation to self-starting motors arises out of the prior art, none can be imposed upon the claims in suit.

The further propositions urged by way of defense, aside from the defense founded upon prior inventions of the synchronous type to be considered, are these: (1) That the synchronous motor of the defendant is the old generator of the art, simply reversed; and (2) that the Tesla invention is not present therein, because (as asserted) "the preponderating magnetization of the" direct current displaces and obliterates the "shifting alternating current magnetization," or Tesla "whirling field of force." However specious both propositions appear on their face and in the argument, neither of them impresses me as controlling.

1. The first raises the question of invention in reversing the dynamo electric generator to serve as an alternative current motor in transmission of power, which was aptly and satisfactorily answered by the opinions in the New England Granite Case, and I deem it sufficient to remark that the differing features and additional showing in the present case do not modify my concurrence in the view there adopted.

2. Whether the theory advanced on the part of the defendant of obliteration of the alternating current magnetization by that of the direct current to the secondary element of the motor is or is not true, is not deemed material as it is unquestionable that the Tesla invention as above defined is brought into the operation of the motor and the structure is within the patent description. Under the view before indicated the defendant cannot escape infringement by the introduction of this element "for better or worse."

The patent references which are relied upon to narrow the invention to nonsynchronous motors remain to be considered. These are the French patents of Cabanellas and Dumesnil and the Bradley United States patent, No. 390,439, each of which devices is set up as disclosing a polyphase power-transmission means by coupling two single phase motors in combination or aggregation. Each has received extended consideration in one and another of the previous decisions upon the issues there presented for construction of the generic patents. That of Bradley, which is strongly pressed in the argument as showing a polyphase machine, stated to be adapted for use "as a motor when fed or actuated by alternating currents," is subsequent in date of patent issue to the Tesla patents, though the original application bears date prior to that of Tesla. The testimony of Mr. Bradley and his attorney, introduced in the present record, cannot affect the interpretation which must be given the disclosure of invention in the original application, and, if such application can be treated as a disclosure of the prior art, I am of opinion that it fails to reach the Tesla conception. Its de-

ficiencies in that regard are clearly-pointed out in the New England Granite Case and later cases, and further comment is unnecessary. The French patents referred to are deemed equally inapplicable and equally well discussed in the prior cases, with no additional showing in the present case which calls for discussion.

I believe that no propositions in the able and extended arguments on the part of the defense have been overlooked in my consideration of this case, although it has not seemed needful to discuss all of them for the purposes of this opinion. My conclusions are that the defendant's synchronous motor structure and operation are within the generic invention as patented, and expressly covered by the claims of Nos. 381,969 and 382,281; that the invention is utilized in the defendant's motor operation, notwithstanding the introduction of direct current excitation to make it synchronous, in lieu of the full realization of the revolving field effect for self-starting; that such supplemental aid does not escape infringement, with or without advantage in such association; and that, in any view, the combination patents referred to are not limited to after-effect of the direct current excitation, but apply to the defendant's combination.

Decree will be entered accordingly, as prayed in the bill.