WESTINGHOUSE ELECTRIC & MFG. CO. v. ELECTRIC APPLIANCE CO.

(Circuit Court, N. D. Illinois, E. D. January 19, 1906.)

No. 27,066.

1. PATENTS—VALIDITY—DOUBLE PATENTING.

Where an application for a basic patent is pending, the granting to the same inventor of a limited combination patent of which the subject-matter of the basic patent is an essential element is not an abandonment of the latter to the public.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 107.]

2. SAME.

The granting of a void patent for an improvement upon valid basic patents then pending on application cannot be held to impair the inventor's rights under the basic patents when granted.

3. SAME—ELECTRIC MOTORS.

The Tesla patents, Nos 511,559 and 511,560, relating to a method and means of transmitting electric power, are not for the same invention covered by patent No. 401,520, previously granted to the same inventor on a later application, and do not constitute a case of double patenting, nor are they affected by the expiration of the British patent corresponding to patent No. 401,520.

In Equity. On final hearing.
See 133 Fed. 396.

Kerr, Page & Cooper and Edward Rector, for complainant.
Bond, Adams, Pickard & Jackson, for defendant.

KOHLSAAT, Circuit Judge. On December 8, 1888, Nikola Tesla made application for two patents pertaining to electrical transmission

of power and a system therefor. Both of these were issued December 26, 1893, numbered, respectively, 511,559 and 511,560. While these applications were awaiting action by the Patent Office, and on February 18, 1889, Tesla filed his application for a patent for a method of operating electro magnetic motors, upon which he thereafter, on April 16, 1889, was granted a patent, No. 401,520. On the last-named date he caused an application to be presented for a corresponding English patent, which was thereafter duly granted to one Lake, and numbered 6,527. This English patent expired April 16, 1903, having a life of only 14 years under the English statute. On December 3, 1889, there was duly issued to Tesla patent No. 416,193, for an electro magnetic motor. On the same day Tesla caused an English patent corresponding to the last-named patent to be issued, which was numbered 14,926. The cause is now before the court on final hearing upon a bill for injunction and accounting, covering claims 1 and 2 of patent No. 511,559 and claims 1, 2, 3, and 4 of patent No. 511,560, which said claims read as follows:

### Patent 511,559.

"(1) The method of operating motors having independent energizing circuits, as herein set forth, which consists in passing alternating currents through both of the said circuits and retarding the phases of the current in one circuit to a greater or less extent than in the other.

"(2) The method of operating motors having independent energizing circuits, as herein set forth, which consists in directing an alternating current from a single source through both circuits of the motor and varying or modifying the relative resistance or self-induction of the motor circuits and thereby producing in the currents differences of phase, as set forth."

### Patent No. 511,560.

"(1) The combination with a source of alternating currents, and a circuit from the same, of a motor having independent energizing circuits connected with the said circuit, and means for rendering the magnetic effects due to said energizing circuits of different phase and an armature within the influence of said energizing circuits.

"(2) The combination with a source of alternating currents and a circuit from the same, of a motor having independent energizing circuits connected in derivation or multiple arc with the said circuit, the motor or energizing circuits being of different electrical character whereby the alternating currents therein will have a difference of phase, as set forth.

"(3) The combination with a source of alternating currents and a circuit from the same, of a motor having independent energizing circuits connected in derivation or multiple arc with the said circuit and of different active resistance, as set forth.

"(4) In an alternating current motor, the combination with field magnets, of independent energizing circuits adapted to be connected in multiple arc with the conductors of the line or transmission circuit and a resistance or self-induction coil in one or both of the said motor circuits, as set forth."

These patents have been before the courts and sustained in Westinghouse E. & M. Co. v. Dayton Fan & M. Co. (C. C.) 106 Fed. 724; same case on appeal, 118 Fed. 562, 55 C. C. A. 390; Same Complt. v. Catskill I. & P. Co. (C. C.) 110 Fed. 377; same case on appeal, 121 Fed. 831, 58 C. C. A. 167; Same Complt. v. Stanley Instrument Co., 133 Fed. 167, 68 C. C. A. 523; Same Complt. v. Roberts et al. (C. C.) 125 Fed. 6; Same Complt. v. Mutual Life Ins. Co. (C. C.) 129 Fed. 213.

Deeming a reargument of the question of patentable novelty as undesirable, defendant substantially confines its defense to two propositions, viz.: First. Each of the claims of both patents in suit is void for "double patenting" by reason of the grant to the same inventor of letters patent No. 401,520 of April 16, 1889, for a "Method of Operating Electro Magnetic Motors." Second. Each of the patents in suit expired in the year 1903, prior to the filing of the bill of complaint in this cause, by reason of the expiration in that year of British letters patent Nos. 6,527 and 19,426, of 1889, under section 4887 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382] in force when the patents in suit were applied for and granted.

It therefore becomes necessary to determine only whether the issuance of the patents constituted double patenting in view of patent No. 401,520, and also whether they were substantially the same improvements as those described in English patents Nos. 6,527 and 19,426 of 1889 and consequently limited by the life term of the same. If the difference between the claims of the patents in suit and those of patent No. 401,520 be only colorable, then either the patents in suit are void or patent No. 401,520 is void. In the case of Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121, it was held that a mere difference in the terms of claims would not avail, and that, while a patentee may be entitled to a patent for an improvement, such improvement must be something substantially different from that comprehended in the first patent. In that case the court held a "second patent, although containing a broader claim, more general in its character, than the specific claim contained in the prior patent, is also void." The facts pertinent to the inquiry were as follows: One Wright filed his application for a patent for a "device for use in connection with cultivators, and claimed for it not only its lifting and depressing action, but also its lifting power which increased as the beams were raised." Subsequently he caused the application to be divided to avoid the delay of an interference, and thereupon secured a patent for the lifting and depressing effect of the spring used in the device upon the beams, leaving the patent for the "lifting power of the spring increasing as the beams rise" for later issue upon the original application. The patent issued for the last-described alleged invention was held to amount to double patenting; the device having been fairly included within the claims of the first patent. The rule then laid down by the Supreme Court has not been modified.

For complainant it is insisted that claim 1 of patent No. 511,559 is broadly for the fundamental method of operation of split phase motors, and that claim 2 thereof is for the specific application of the underlying principle of operating such motors by means of divided circuits of different electrical character, and that the four claims of patent No. 511,560 describe apparatus for carrying out the derivation method of the second claim of patent No. 511,559, as distinguished from the induction method shown in figure 1 thereof. Defendant urges that the method claim and the apparatus claims of the two patents in suit are simply different verbal expressions of exactly the same inventive thought, that a defense to one is a defense to both,

and that the same inventive thought is found in patent No. 401,520 and the English patents. At the date of the filing of the applications in the patents before the court Tesla had already invented the polyphase motor and system. He had solved the difficulty of utilizing the alternating currents in starting and raising the speed of the motor into synchronism with the generator. This he accomplished by means of a succession or sequence of currents as they emanated from the generator. This system required special generators and the use of two or more circuits, and was cumbersome and expensive, especially when sought to be applied to systems where the units are small. To meet these objections, Tesla evolved the methods and appliances of the patents in suit. "I have," he says, "discovered another method of operating these motors which dispenses with one of the line circuits and enables me to run the motors by means of alternating currents from a single original source. * * * Broadly stated, this invention consists in passing alternating currents obtained from one original source through both of the energizing circuits of the motor and retarding the phases of the current in one circuit to a greater or less extent than in the other. The distribution of current between the two motor circuits may be effected by induction or by derivation." Instead of employing two independent currents and two transmission circuits between such sources and the motor, Tesla here employed but a single source and a single circuit leading to the motor, and at the latter divided the circuit into two paths, and by artificial means retards the current in one of these paths to a greater extent than in the other.

The novelty of claim 1 of patent No. 511,559 consists in dividing a single alternating current by induction or derivation and making it available for starting and raising to synchronism with the generator the speed of a motor by artificially varying the relative phases of the current in the motor circuits respectively. Manifestly any system of division of the single current which does not vary the phase of the motor circuits would be inoperative. "As a scientific abstraction," say counsel in the brief filed in the Mutual Life Case, "the laws regulating the flow of electric currents were as well known prior to Tesla's invention as the laws governing the flow of water, but no useful application of the principle of artificially retarding an alternating current had ever been proposed until Tesla, conceiving the possibility of operating a two phase motor from a single current, turned the principle to useful account, and demonstrated that the retardation which had been regarded as fatal to the successful operation of the ordinary alternating current system, was the keystone of success in a great engineering problem." The fact that the difference in phase between the two independent currents of the polyphase motor system, as well as that existing between the currents of the so-called split-phase motor system, could be artificially modified, was not new. It is the combination which is new. Even this would seem to be in a measure a logical sequence from the principles established in the polyphase motor patents. The present patents seem to be merely an extension of those principles. Yet, having in mind the fact of the re-

finement of distinctions both in principle and application thereof disclosed in the electrical art, and the fact that the result attained in the present case is so great an advance upon the prior art, I should be disposed, independently of the decisions cited, to sustain the patent, even were its patentable novelty not conceded.

I confess to some difficulty in distinguishing between claims 1 and 2 of the patent under consideration. It seems to me to require a rather narrow reading of it to justify the statement that claim 2 covers only a specific method of accomplishing the operation of motors disclosed in claim 1. This, however, is conceded by counsel for defendant. Therefore, and also because it does not seem necessary to go into this question for the purposes of this hearing, I assume the admission to be justified by the language. The four claims of patent No. 511,560 alleged to be infringed are in terms for different devices for practicing the invention of patent No. 511,559. Whatever difference there is in the various claims under consideration seems to consist more in the language of the claims than in reality. Whether this be so to the extent of invalidating any of them or not is not material here. It is sufficiently apparent for the purpose of enabling the court to hold that the defenses raised herein, if sustained, would apply to all of said claims.

As above stated, the defense of double patenting rests upon the issuance of patent No. 401,520 on April 16, 1889, while the applications for patents Nos. 511,559 and 511,560 were still pending in the patent office. Claims 1, 2, and 4 of patent No. 401,520 read as follows:

"(1) The method of operating an alternating-current motor herein described by first progressively shifting or rotating its poles or points of greatest attraction and then, when the motor has attained a given speed, alternating said poles, as described.

"(2) The method of operating an electro-magnetic motor herein described, which consists in passing through independent energizing circuits of the motor alternating currents differing in phase and then, when the motor has attained a given speed, alternating currents coinciding in phase as described."

"(4) The method of operating a synchronizing-motor, which consists in passing an alternating current through independent energizing circuits of the motor and introducing into such circuits a resistance and self-induction coil, whereby a difference of phase between the currents in the circuits will be obtained, and then, when the speed of the motor synchronizes with that of the generator, withdrawing the resistance and self-induction coil, as set forth."

As will be seen, the distinguishing feature of claims 1 and 2, if any, consists in a method for changing the motor of the patents in suit and of the polyphase patents of the prior art from a double-circuit motor to a synchronizing motor after it has reached a certain speed. The matter claimed as new in the patents in suit is clearly disclosed, and to that is added the idea and method of removing the difference in phase of the motor circuits by any known means. (See lines 31 to 37, page 3, of specification.) Practically the same idea is set out at lines 95 to 99, page 2, of the specification of patent No. 511,560, where the patent says the two resistances are capable of being bodily withdrawn from, or inserted in, or varied in, the circuits by any well-known means. This is said with reference to vary-

ing the phases of the circuits. To carry out the idea of patent 401,520 would be but to vary the degree of the application of the eliminating process above stated. Whether the claims of patent No. 401,520 describe a combination, or are simply for an aggregation, is eliminated from the case by admission of counsel for defendant, who concede their validity. They are either invalid, or constitute a valid patent for what they cover; i. e., a method for operating a motor by the means disclosed in the patents in suit up to synchronism with the generator, and then, by proper devices, removing the difference in phase of the motor circuits, so that the motor will be run by the generator only. If, then, the claims are for a valid combination, the synchronizing switch or its equivalent must be an essential feature thereof, and it cannot be said that, where an application for a basic patent is pending, the granting of a limited combination patent of which the basic patent when granted would be an essential element abandons the latter to the public. The two patents are entirely unlike. If the patents in suit had been granted before that of No. 401,520, and if the latter is a valid combination patent, it would not be for the same idea as that embraced in patent No. 511,559, and consequently would not constitute double patenting. In his specification Tesla disavows any claim to the invention of the patents in suit. While this would be of no avail were it apparent that such was not the case, yet it may aid in construing the scope of the claims.

But suppose Tesla had taken out the patents in suit prior to patent No. 401,520, and had embodied in his apparatus or devices the well-known means for varying, or withdrawing from, or inserting in the circuits, difference in phase set out in lines 95 to 99, page 2, of patent No. 511,560, would it not have disclosed all the elements of patent No. 401,520? It seems to me it would. Here, however, we are met by the proposition that the claims of the patents in suit do not cover the phase eliminating methods or devices, and in a case like the present one the specification should not be construed in that respect to modify them. Tesla being the inventor in both cases, I can see no reason why he was required to follow up the specification by making his claims cover it. Such I do not understand to be the law. Tesla chose to make that feature the subject of a new application, as he had a right to do. Counsel for defendant seek to bring this case within the rule laid down by the Supreme Court in the case of Miller v. Eagle Mfg. Co., supra, and that of the cases decided upon the principles laid down in that case. In the Miller Case the patent first issued on division so clearly embraces all the elements of the second patent that it is unmistakably the same invention. The original application in the patents before the court constitute essential elements of the limited patent first issued herein, but do not constitute the whole combination. This was held to be no dedication to the public in the Dayton Fan & Motor Case (C. C.) 106 Fed. 724, affirmed 118 Fed. 562, 55 C. C. A. 390; Thomson-Houston Co. v. Ohio Brass Co., 80 Fed. 712, 26 C. C. A. 107; Palmer v. Brown Mfg. Co., 92 Fed. 925, 35 C. C. A. 86. If further proof that the patents are not identical was needed, it may be found in the fact that No. 401,520 applies as well to a com-

bination with polyphase motors as with a split-phase motor. If, on the other hand, patent No. 401,520 should be held void as an aggregation, that fact would not amount to a dedication to the public of the inventions of the two patents in suit, while the applications were pending. They are in no different situation from what they would be in had they been issued prior to No. 401,520. The granting of a void patent for an improvement upon valid basic patents pending on application cannot be held to impair the inventor's rights under the basic patents. The latter, when granted, are operative from the date of filing the application. In the case of Thomson-Houston Co. v. Ohio Brass Co., supra, Judge Taft, speaking for the Court of Appeals for the Sixth Circuit, in passing upon the defense of double patenting based upon conditions of fact practically identical with those here involved, says:

"Now, it is not material to this discussion whether these improvements are patentable or not. They are expressly claimed as improvements, and no attempt is made by the patentee to cover anything but them. If inventions at all, then they are separable from the old switch and trolley combinations; and, if they are not inventions, the patents are void and cover nothing."

It seems clear to me that the court would be doing violence to the facts if it should hold the two patents in suit to be identical with patent No. 401,520. The rule of law as to double patenting does not apply. This being so, the patents in suit were in no wise affected by the expiration of the English patents. They were nothing more than improvements upon the basic patents in suit. They apply to a convertible motor, and as such are outside the scope of the patent of the original application. In the case of Westinghouse Electric & Mfg. Co. v. Stanley Instrument Co., supra, the Circuit Court of Appeals for the First Circuit in an opinion rendered June 14, 1905, has taken this view of the matter, in which, so far as is material in this case, I concur. As above stated, the defense rests its case almost wholly upon the two points; i. e. (1) double patenting; (2) expiration of British patents.

The other matters of defense suggested have been so often decided adversely to defendant's position by the courts, some of them by this court, that I do not deem them entitled to be further discussed. They do not appeal to me as well taken.

The finding must be for the complainant. Complainant may prepare a decree and present it.